FILED

2012 Aug-14  AM 10:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | | |
|---|---|---|
| RHONDA RIDINGER, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 3:11-CV-1149-LSC |
| | ] | |
| MICHAEL J. ASTRUE, | ] | |
| Commissioner of Social Security, | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

## I.    Introduction

Plaintiff, Rhonda Ridinger, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI").   Ms. Ridinger timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Ridinger was forty-nine years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a sixth grade education. (Tr. at 35-36.) Plaintiff's past work experiences include employment as a cashier, newspaper

Page 1 of  14

deliverer, and nurse aide. (Doc. 11 at 2, Tr. at 166.)  Ms. Ridinger claims that she became disabled on December 8, 2006, from "right knee pain secondary to degenerative joint disease," depression, and anxiety.  (Doc. 9 at 2, Tr.  at 134.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops.  (*Id.*)  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  (*Id.*)  The decision depends on the medical evidence in the record.  See *Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1.   20 C.F.R.

§§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. (*Id.*) If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. (*Id.*) If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. (*Id.*) Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. (*Id.*)

Applying the sequential evaluation process, the ALJ found that Ms. Ridinger met "the insured status requirements of the Social Security Act through September 30, 2009." (Tr. at 13.) He further determined that Ms. Ridinger has not engaged in substantial gainful activity since the alleged onset of her disability. (*Id.*) According

to the ALJ, Plaintiff's "right knee pain secondary to degenerative joint disease and anxiety" are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet, nor medically equal, any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. at 17.) The ALJ determined that Ms. Ridinger has the following residual functional capacity ("RFC"):

> the claimant has the residual functioning capacity to perform light work . . . with a sit/stand option. As a result of the claimant's knee problems, she can sit for fifteen minutes at one time, stand for fifteen minutes at one time and walk for fifteen minutes throughout an eight hour work day. The claimant can perform occasional stair climbing. Balancing can be performed on a frequent basis. Stair climbing, stooping, kneeling and crouching can be performed on an occasional basis. As a result of the claimant's alleged anxiety, she would be limited to low stress type jobs which are defined as SVP 2 or less and involve only simple work related decisions.

(Tr. at 19.)

The ALJ determined that the plaintiff is unable to perform any past relevant work. (Tr. at 22.) The ALJ then determined that "[c]onsidering claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform," such as garment sorter or packager. (Tr. at 23.) Accordingly, the ALJ entered a finding that

Page 4 of 14

Plaintiff has "not been under a disability, as defined in the Social Security Act, from December 8, 2006, through the date of this decision." (Tr. at 24.)

## II.    Standard of Review

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. (*Id.*) "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against

the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.   Discussion

Plaintiff claims that the ALJ's decision should be reversed because the ALJ failed to give proper weight to the opinions of her treating physicians, Dr. Bacon and Dr. Murphy. (Doc. 9 at 6-12.) Plaintiff also contends that the Appeals Council erred in "provid[ing] no basis" for denying Plaintiff's request for review of the ALJ's decision in light of additional medical records Plaintiff submitted. (Doc. 9 at 10-11.)

### A.   Weight of Treating Physicians

The ALJ affords a physician's testimony "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The weight afforded a

medical opinion regarding the nature and severity of a plaintiff's impairments depends, among other things, upon: the examining and treating relationship the medical source had with the plaintiff, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ to give substantially less weight to a treating physician's opinion when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440).

Opinions such as whether a plaintiff is disabled, the plaintiff's residual functional capacity, and the application of vocational factors "are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The court weighs doctors' evaluations of the plaintiff's "condition and the medical consequences thereof, not their opinions of the legal consequences of his condition."

*Lewis*, 125 F.3d at 1440. Such physician's opinions are relevant to the ALJ's findings, but they are not determinative, since the ALJ bears the responsibility for assessing a plaintiff's RFC. *See, e.g.*, 20 C.F.R. § 404.1546(c).

### i.     Dr. Bacon

Plaintiff first argues that the ALJ gave improper weight to the opinion of her treating physician, Dr. Bacon. (Doc. 9 at 6.) The ALJ gave some weight to the physical performed by Dr. Bacon, but gave little weight to the "pain form" completed by the doctor. On that form, Dr. Bacon indicated that the plaintiff's pain reached the point of the "abandonment" of a task, that the plaintiff's pain would be distracting to adequately perform daily activities, and that the plaintiff would miss at least fifteen to eighteen work days a year. (Tr. at 15, 21, 169, 242-43.) The ALJ noted that these were merely answers circled on an attorney-generated form, and that Dr. Bacon did not provide explanation or support for such opinions. (Tr. at 21.)

Dr. Bacon also performed a functional capacity questionnaire and pain questionnaire examination on the plaintiff and opined that "the claimant could sit for four hours, stand for two hours, and walk for two hours [in] an eight hour work day. . . lift up to ten pounds. . . never use her left leg, never climb, never kneel, and never crawl." (Tr. at 15, 20, 242-43.) However, this opinion was inconsistent with his own

medical records. At his deposition, Dr. Bacon stated that the plaintiff could carry twenty to thirty pounds. (Tr. at 16, 21.) Also, the ALJ noted that Dr. Bacon's opinion was inconsistent with evidence from other doctors who stated Plaintiff could lift twenty to forty pounds. (Tr. at 20-21.) The ALJ gave Dr. Bacon's opinion some but little weight because of the lack of support for his assertions that the plaintiff's functioning was impaired with treatment. The ALJ also noted that Dr. Bacon saw the plaintiff only twice. (Tr. at 16.)

The same day that Dr. Bacon opined that the plaintiff could stand for two hours and walk for two hours a day, Dr. Bacon opined that the plaintiff's "pain was present to such an extent as to be distracting to adequate performance of daily activities. Physical activity such as walking, standing, bending, stooping and moving extremities, increased pain and to such a degree as to cause distraction from tasks . . . " (Tr. at 15, 20, 244.) This conclusion is not bolstered by the evidence. Plaintiff stated at the hearing that she can sit fifteen minutes, walk fifteen to twenty minutes, and stand fifteen minutes at a time, and that she can drive her car to her mother's house, pick up her child from school, and answer the phone for her husband's business. (Tr. at 19.)

The medical evidence also supported a finding contrary to Dr. Bacon's opinion. Treating physician and orthopedist, Dr. Anderson, performed a functional capacity

evaluation and concluded that the plaintiff could stand frequently, balance frequently, climb stairs occasionally, stoop occasionally, sit constantly, and carry forty pounds occasionally. (Tr. at 169.)  In addition, consulting psychologist Dr. Wood performed a mental examination of the plaintiff and noted that Plaintiff could perform many household chores, such as cleaning the bathtub, sweeping, taking out the trash, and doing the dishes.  (Tr. at 20, 222.)  Dr. Carmichael, the state agency physician, found that the plaintiff was "capable of performing work at the light level of exertion with some restrictions." (Tr. at 20, 212-19.) The ALJ had good cause to give little weight to Dr. Bacon's opinion, as it was not supported by his own records, not supported by opinions of other physicians, and not bolstered by the evidence.

### ii.   Dr. Murphy

Plaintiff also argues that the ALJ failed to give proper weight to the opinion of her treating physician, Dr. Murphy. (Doc. 9 at 6.) Dr. Murphy completed a pain form for the plaintiff in October 2009.  (Tr. at 389.)  As with Dr. Bacon's pain assessment, Dr. Murphy's assessment consisted of answers circled on an attorney-generated form. (*Id*.)  Dr. Murphy indicated that the plaintiff's pain was present to the extent that it was "intractable and virtually incapacitating."  (*Id*.)  He also indicated that the side effects of plaintiff's prescribed medication could be expected to be severe and to limit

the medication's effectiveness. (*Id.*) The ALJ found that Dr. Murphy's pain form was entitled to little weight because it was unsupported by his own medical evidence and the record as a whole. (Tr. at 21.)

The ALJ noted that a course of treatment by a pain specialist is not consistent with intractable pain. (Tr. at 21.) Included in the record are pain questionnaires given by Dr. Murphy to the plaintiff. (Tr. at 283, 291, 298, 307.) Plaintiff was instructed to rate her pain from between one and ten on several different visits. (*Id.*) According to these forms, Plaintiff rated her pain at an eight or nine out of ten at its worst without medication. (*Id.*) With medication, the plaintiff ranked her pain as ranging from one to three. (*Id.*) Plaintiff's pain scores demonstrate the effectiveness of Dr. Murphy's treatment to reduce her pain to a level where she could sustain work activity. (Tr. at 20, 222.) The ALJ found that it was inconsistent for Dr. Murphy to treat the plaintiff for pain and to receive findings from her that the treatment was working, only to then opine that the plaintiff's pain was incapacitating. (Tr. at 21-22.)

Dr. Murphy's pain form was also not supported by the opinions of other physicians. The ALJ noted that the plaintiff was cleared to return to work by an orthopedist, Dr. Anderson. (Tr. at 21.) Additionally, the ALJ noted that the functional capacity evaluation performed by Dr. Carmichael concluded that the plaintiff could

perform light work. (Tr. at 20, 212-19).  Nor was Dr. Murphy's opinion bolstered by the plaintiff's own testimony about her ability to function in doing daily activities around the house.  (Tr. at 19, 21, 41.)  The record demonstrates that there was good cause for the ALJ to give little weight to Dr. Murphy's opinion.

### B.    Review by the Appeals Council

Plaintiff also mentions in passing that the Appeals Council erred in "provid[ing] no basis" for denying Plaintiff's request for review of the ALJ's decision in light of additional medical records that Plaintiff submitted.  (Doc. 9 at 10-11.)   In denying Plaintiff's request for review, the Appeals Council stated that it considered four exhibits: a medical source statement and treatment notes from Dr. Murphy, treatment notes from Dr. Luckett, treatment notes from Dr. Pennington, and a deposition of Dr. Murphy.  (Tr. at 4-5.)  Insofar as Plaintiff is arguing that the Appeals Council did not state the weight it gave to these records, it is not required to make such a finding.  *See Robinson v. Astrue*, 365 F. App'x 993, 997 (11th Cir. 2010) (unpublished opinion) (affirming Appeals Council's denial of review of an ALJ's decision when Appeals Council did not make explicit findings regarding new treating physician's opinion). However, when a plaintiff submits additional evidence to the Appeals Council and argues to the court that the Appeals Council erred in denying review, a district court

must determine whether that new evidence renders the denial of benefits erroneous. *Dunn v. Astrue*, 660 F. Supp. 2d 1290, 1294-97 (N.D. Ala. 2009).

None of the additional evidence Plaintiff submitted to the Appeals Council undermines the substantial evidence supporting the ALJ's decision. As an initial matter, the opinion and treatment notes of Dr. Murphy were in fact before the ALJ, and as discussed *supra*, the ALJ discussed these records and provided good cause for discounting Dr. Murphy's opinion. Nor do the other records Plaintiff submitted to the Appeals Council reflect that Plaintiff experienced disabling limitations. Dr. Luckett's treatment notes reflect that Plaintiff experienced diabetes, but that this condition was controlled. (Tr. at 403-08.) The mere diagnosis of diabetes is insufficient to establish that Plaintiff experienced functional limitations due to that condition. *See Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987) (mere diagnosis of polymyalgia rheumatica says nothing about why condition makes it impossible for claimant to be gainfully employed). Dr. Pennington's treatment notes consist of a single page of nearly illegible notes largely pertaining to visits from June 8, 2005, and April 22, 2006, well before Plaintiff alleges she became disabled. (Tr. at 418). The portion of the notes pertaining to a visit in February 2008 does not reflect that Plaintiff experienced any disabling limitations, only that she had a history of surgery and had

experienced diabetes. (*Id.*) Finally, Dr. Murphy's deposition testimony does not undermine the substantial evidence supporting the ALJ's decision. To the contrary, his suggestion that Plaintiff could lift up to twenty pounds is consistent with Plaintiff's RFC for a reduced range of light work. (Tr. at 428.) Importantly, Dr. Murphy specifically states: "I'm not certified to evaluate work restrictions," (*Id.*) which casts doubt on any opinion offered in his deposition. In sum, the Appeals Council committed no error in denying review in light of Dr. Murphy's deposition and other additional evidence.

### IV.   Conclusion

Upon review of the administrative record, and considering all of Ms. Ridinger's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 14th day of August 2012.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
160704